[Cite as *State ex rel. Cincinnati v. Indus. Comm.*, 2024-Ohio-5010.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. City of Cincinnati, | : | |
| Relator, | : | No. 23AP-332 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 17, 2024

**On brief:** *Dinsmore & Shohl LLP*, *Brian P. Perry*, and *Anthony V. Jagoditz*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John R. Smart*, for respondent Industrial Commission of Ohio.

**On brief:** *Fox & Fox Co.*, *L.P.A.*, *Karen P. Mitchell*, and *Stephanie D. Horn*, for respondent Michael K. Hines.

IN MANDAMUS

LUPER SCHUSTER, J.

{¶ 1} Relator, City of Cincinnati ("employer"), initiated this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to reinstate the October 25, 2022 tentative order and deny the application of respondent, Michael K. Hines ("claimant"), for permanent partial disability ("PPD").

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined the commission correctly applied R.C. 4123.57 in determining claimant is

entitled to PPD compensation.  Thus, the magistrate recommends this court deny employer's petition for a writ of mandamus.

**{¶ 3}**  No party has filed objections to the magistrate's decision.  "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c).  The case is now before this court for review.

**{¶ 4}**  Upon review, we find no error of law or other defect on the face of the magistrate's decision.  Therefore, we adopt the magistrate's decision as our own, including findings of fact and conclusions of law, and we deny employer's petition for a writ of mandamus.

*Writ of mandamus denied.*

BEATTY BLUNT and LELAND, JJ., concur.

—————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. City of Cincinnati, | : | |
| Relator, | : | |
| v. | | No. 23AP-332 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on August 13, 2024

*Dinsmore & Shohl LLP*, *Brian P. Perry*, and *Anthony V. Jagoditz*, for relator.

*Dave Yost*, Attorney General, and *John R. Smart*, for respondent Industrial Commission of Ohio.

*Fox & Fox Co.*, *L.P.A.*, *Karen P. Mitchell*, and *Stephanie D. Horn*, for respondent Michael K. Hines.

IN MANDAMUS

{¶ 5} Relator, City of Cincinnati ("employer"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to reinstate the October 25, 2022, tentative order and deny the application for permanent partial disability ("PPD") filed by respondent, Michael K. Hines ("claimant").

Findings of Fact:

{¶ 6}  1. On December 3, 2020, claimant was diagnosed with Stage IV prostate cancer. Claimant had worked for the employer as a firefighter from 1984 through December 19, 2014.

{¶ 7}  2. On September 3, 2021, claimant filed an application for workers' compensation benefits via both an FROI-1 and an Ohio Bureau of Workers' Compensation ("BWC") Form C-265, Presumption of Causation for Firefighter Cancer.

{¶ 8}  3. In a November 23, 2021, report, Rafid Kakel, M.D., found the following, in pertinent part: (1) there is insufficient evidence to support that the alleged exposures resulted in the development of claimant's stage IV prostate cancer; (2) prostate cancer has no definite occupational risk factors; (3) the most important risk factor for prostate cancer is age over 50, and claimant is 62 years old; (4) claimant is also at increased risk for the development of prostate cancer as a result of his smoking history; (5) claimant occasionally uses smokeless tobacco and smoked tobacco for about 20 years, which would increase the risk for the development of cancer, including prostate cancer; and (6) claimant would have been exposed to group 1 and/or 2a carcinogens during his work as a firefighter.

{¶ 9}  4. In a January 31, 2022, report of Barbara Cochran, M.D., Dr. Cochran found the following: (1) Dr. Kakel has ignored all the literature of the marked risk for prostate cancer in firefighters, and there is no literature that cites smokeless tobacco as a risk factor for prostate cancer; (2) Dr. Kakel's report does not evaluate the effect of the group 1 and 2a carcinogens or the significant peer reviewed medical literature for risk of prostatic cancer in firefighters and cannot be relied upon to rebut the presumption; (3) a history of smoking some 20 years prior to development of prostate cancer cannot be considered an extremely high risk and cannot be a significant factor in the cause of progression of cancer; and (4) claimant's advanced prostatic cancer was caused by his exposures to the group 1 and 2a carcinogens in his essential job functions as a firefighter.

{¶ 10}  5. In a March 4, 2022, addendum report, Dr. Kakel indicated the following additional findings: (1) overall, the medical literature regarding firefighters and prostate cancer is inconclusive; (2) it has been opined that increased general preventative medical care and additional screenings for firefighters may have led to more findings of prostate

cancer; and (3) the additional medical information submitted does not alter Dr. Kakel's previously expressed opinions.

{¶ 11} 6. The employer, a self-insuring employer, rejected claimant's claim. However, in a March 10, 2022, order, a district hearing officer ("DHO") allowed the claim for the condition of advanced prostatic cancer stage IV, finding the following: (1) the September 2, 2021, FROI-1 is granted; (2) the claim is allowed for advanced prostatic cancer stage IV; (3) pursuant to R.C. 4123.68(X)(1), claimant has satisfied the burden that he has contracted advanced prostatic cancer stage IV, was assigned to at least six years of hazardous duty as a firefighter, and was exposed to a group 1 or 2a carcinogen while working as a firefighter, and has met the presumption; (4) Dr. Kakel's November 23, 2021, and March 4, 2022, reports are not sufficient to rebut the presumption of cancer; and (5) in addition to the records provided by claimant to meet the presumption, claimant also provided the January 31, 2022, report of Dr. Cochran, which provided a comprehensive review of claimant's medical records, as well as scientific studies, that support her conclusion that claimant's exposure to the carcinogens during his career as a firefighter caused claimant's diagnosis. The employer appealed.

{¶ 12} 7. In an April 6, 2022, addendum report, Dr. Kakel made the following additional findings: (1) there is insufficient evidence to support that claimant's reported exposure to asbestos, lead, and other carcinogens at work resulted in the development of his prostate cancer; (2) claimant's history of tobacco use presents an extremely high risk for the development of prostate cancer; (3) Dr. Kakel's previously expressed opinions remain unchanged, and claimant's prostate cancer is not supported as work related.

{¶ 13} 8. On April 21, 2022, Dr. Cochran filed a supplemental report, in which she reviewed Dr. Kakel's supplemental report. Dr. Cochran found the following: (1) all men have a risk factor of prostate cancer because they are men and have a prostate gland; (2) age is not a significant risk factor, much less a significant risk factor; (3) the 2013 article cited by Dr. Kakel that increase in smoking is a risk factor for prostate cancer is not supported by peer-reviewed medical literature; (4) many early articles conclude that smoking is not a risk factor for developing prostate cancer, while more current articles conclude that it may be a risk factor but the level of risk is not certain; (5) some articles state that occupational risk factors play a role in development of prostate cancer; (6) some

articles state that there is no increased risk of prostate cancer for individuals with past smoking who have stopped for ten years, like claimant; (7) Dr. Kakel's opinion that prostate cancer is a highly significant risk factor of past smoking is not supported by the medical literature; and (8) claimant's prostate cancer is causally related to his exposure to the group I and 2a carcinogens in his job functions as a firefighter, and prior smoking has not played a role.

{¶ 14} 9. After a hearing, on June 1, 2022, a staff hearing officer ("SHO") issued an order, in which he vacated the DHO's March 10, 2022, order and found the following: (1) the claim is allowed for stage IV prostate cancer; (2) claimant contracted an occupational disease in the course of and arising out of his employment as a firefighter with the employer; (3) claimant testified that he used to be a tobacco smoker but has not smoked in 20 years; (4) claimant provided sufficient evidence to satisfy the requirements of R.C 4123.68(X); (5) claimant is entitled to the presumption that his stage IV prostate cancer was caused by his work activities; (6) the employer did not contest at the hearing that claimant was entitled to this statutory presumption; (7) the employer has presented sufficient evidence under R.C. 4123.68(X)(2) to rebut claimant's statutory presumption via Dr. Kakel's April 6, 2022, report that claimant's prior history of tobacco usage presented claimant with an extremely high risk for the development of prostate cancer; (8) however, claimant satisfied his burden of proving by a preponderance of the evidence that he sustained an occupational disease in the course of and arising out of his employment with the employer, relying upon the January 31, 2022, and April 22, 2022, reports of Dr. Cochran; and (9) therefore, claimant contracted an occupational disease in the course of and arising out of his employment as a firefighter, and the claim is allowed for stage IV prostate cancer. The employer appealed, but the commission refused further appeal in a June 23, 2022, order.

{¶ 15} 10. On October 20, 2022, claimant filed a C-92 application for determination or increase of percentage of permanent partial disability, requesting a PPD award for the allowed condition.

{¶ 16} 11. In an October 25, 2022, BWC tentative order, the BWC dismissed the application, finding that the C-92 application cannot be processed per S.B. 27. Claimant appealed.

{¶ 17} 12. In a January 12, 2023, order, the DHO vacated the BWC's tentative order, finding the following: (1) R.C. 4123.68(X)(4) provides that a claim allowed under the firefighters' presumption is not eligible for a PPD award; (2) in the June 1, 2022, SHO order, the SHO found that the employer successfully rebutted the presumption set forth in R.C. 4123.68(X) via evidence of claimant's prior history of tobacco products; (3) the SHO then allowed the claim on the basis that claimant had satisfied his burden of proving by a preponderance of the evidence that he sustained an occupational disease in the course of and arising out of his employment; and (4) thus, the claim was not allowed under the firefighters' presumption in R.C. 4123.68(X), and there is no bar on the receipt of PPD compensation. The employer appealed.

{¶ 18} 13. In a March 22, 2023, order, the SHO returned the claim file to the BWC to process the C-92, finding the following: (1) this claim is not a claim allowed under R.C. 4123.68(X); (2) the claim is allowed by the June 1, 2022, SHO order, in which the SHO found that claimant initially filed the claim under R.C. 4123.68(X), but the employer rebutted the presumption created by R.C. 4123.68(X); (3) the SHO found that because claimant contracted an occupational disease due to his employment, pursuant to the general provisions in R.C. 4123.68, and not the specific portion of R.C. 4123.68(X), claimant was eligible to apply for PPD compensation under R.C. 4123.57.

{¶ 19} 14. On April 3, 2023, the employer filed a request for reconsideration, which the commission denied on May 11, 2023.

{¶ 20} 15. On June 2, 2023, the employer filed the instant mandamus action, requesting that this court order the commission to reinstate the October 25, 2022, BWC tentative order and deny claimant's application for PPD.

Conclusions of Law and Discussion:

{¶ 21} The magistrate recommends that this court deny the employer's request for a petition for writ of mandamus.

{¶ 22} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 23} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 24} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A) contains a clear and broad grant of continuing jurisdiction to the commission. *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 15. However, that jurisdiction is conditioned on specific criteria: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998).

{¶ 25} A clear mistake of law exists when the hearing officer applies the wrong law to the facts in the administrative record. *State ex rel. Waste Mgt. of Ohio, Inc. v. Indus. Comm.*, 10th Dist. No. 19AP-453, 2021-Ohio-2478, ¶ 45, citing *State ex rel. McNea v. Indus. Comm.*, 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 10.

{¶ 26} Pursuant to R.C. 4123.68, "[e]very employee who is disabled because of the contraction of an occupational disease" is entitled to participate in the Ohio workers' compensation system. R.C. 4123.68 lists a number of diseases that have been designated as "scheduled" occupational diseases. If an injured worker's condition is not one of the occupational diseases specified in R.C. 4123.68, the injured worker bears the burden of demonstrating that his or her condition qualifies as an occupational disease, entitling the worker to participate in the Ohio workers' compensation system. To establish the right to participate in the worker's compensation fund a claimant must show by a preponderance of the evidence both that (1) the injury arose out of and in the course of employment and (2) that a proximate causal relationship existed between the injury and the harm or

disability. *White Motor Corp. v. Moore*, 48 Ohio St.2d 156 (1976), paragraph one of the syllabus.

{¶ 27} R.C. 4123.57 provides, in pertinent part, the following:

Partial disability compensation shall be paid as follows.

Except as provided in this section, not earlier than twenty-six weeks after the date of termination of the latest period of payments under section 4123.56 of the Revised Code, or not earlier than twenty-six weeks after the date of the injury or contraction of an occupational disease in the absence of payments under section 4123.56 of the Revised Code, the employee may file an application with the bureau of workers' compensation for the determination of the percentage of the employee's permanent partial disability resulting from an injury or occupational disease.

R.C. 4123.68(X) provides:

(1) Cancer contracted by a firefighter: Cancer contracted by a firefighter who has been assigned to at least six years of hazardous duty as a firefighter constitutes a presumption that the cancer was contracted in the course of and arising out of the firefighter's employment if the firefighter was exposed to an agent classified by the international agency for research on cancer or its successor organization as a group 1 or 2A carcinogen.

(2) The presumption described in division (X)(1) of this section is rebuttable in any of the following situations:

(a) There is evidence that the firefighter's exposure, outside the scope of the firefighter's official duties, to cigarettes, tobacco products, or other conditions presenting an extremely high risk for the development of the cancer alleged, was probably a significant factor in the cause or progression of the cancer.

(b) There is evidence that shows, by a preponderance of competent scientific evidence, that exposure to the type of carcinogen alleged did not or could not have caused the cancer being alleged.

(c) There is evidence that the firefighter was not exposed to an agent classified by the international agency for research on cancer as a group 1 or 2A carcinogen.

(d) There is evidence that the firefighter incurred the type of cancer alleged before becoming a member of the fire department.

(e) The firefighter is seventy years of age or older.

(3) The presumption described in division (X)(1) of this section does not apply if it has been more than fifteen years since the firefighter was last assigned to hazardous duty as a firefighter.

(4) Compensation for cancer contracted by a firefighter in the course of hazardous duty under division (X) of this section is payable only in the event of temporary total disability, working wage loss, permanent total disability, or death, in accordance with division (A) or (B)(1) of section 4123.56 and sections 4123.58 and 4123.59 of the Revised Code.

(5) As used in division (X) of this section, "hazardous duty" has the same meaning as in 5 C.F.R. 550.902, as amended.

{¶ 28} The primary goal of statutory interpretation is to determine and uphold "the General Assembly's intent in enacting the statute." *Knollman-Wade Holdings, LLC v. Platinum Ridge Properties, LLC*, 10th Dist. No. 14AP-595, 2015-Ohio-1619, ¶ 14. "In determining legislative intent, we must first look to the plain language of the statute." *Id.* As a general rule, the words and phrases of a statute will be read in context and construed according to the rules of grammar and common usage. R.C. 1.42. *See In re Acubens, LLC*, 10th Dist. No. 17AP-870, 2018-Ohio-2607, ¶ 14, citing *State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 90 Ohio St.3d 229, 231 (2000). Where the language of a statute is plain and conveys a clear and definite meaning, there is no need for statutory interpretation. *State v. Banks*, 10th Dist. No. 11AP-69, 2011-Ohio-4252, ¶ 13. If the statute is clear and unambiguous, the court must apply it as written. *State v. Ashcraft*, 171 Ohio St.3d 747, 2022-Ohio-4611, ¶ 7. We may look beyond the plain statutory language only when a definitive meaning remains elusive despite a thorough, objective examination of the language. *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 23, citing *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11. "If strict construction of a statute would result in 'unreasonable or absurd consequences,' a construing court may reject the strict construction doctrine, because courts must presume

that the legislature enacted a statute for a 'just and reasonable result.' " *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶ 23.

{¶ 29} In the present case, the employer argues that the commission failed to properly exercise its continuing jurisdiction and vacate the March 22, 2023, SHO's order due to a clear mistake of law in allowing the BWC to process claimant's application for PPD benefits. The employer contends that the plain language of R.C. 4123.68(X)(4) excludes PPD benefits from all firefighter cancer claims—not only those claims allowed via the presumption. The employer points out that the title of R.C. 4123.68(X) is "Cancer contracted by a firefighter," which demonstrates the legislature's intent that its provisions apply to all cancers contracted by a firefighter, not only those allowed via the presumption. The employer asserts that had the legislature intended firefighter claims to be allowed by a showing of the preponderance of the evidence after the presumption was rebutted, then it would have expressed this allowance within the language of the statute. The employer further argues that the fact that PPD is not a form of compensation enumerated within R.C. 4123.68(X)(4) is clear evidence that it was not the legislature's intent to allow this form of compensation. The employer compares the exclusion of PPD in R.C. 4123.68(X)(4) to the exclusion of PPD in R.C. 4123.68(W), which provides that "[c]ompensation on account of cardiovascular, pulmonary, or respiratory diseases of firefighters and police officers is payable only in the event of [TTD, PTD,] or death," and likewise contains a presumption of causation when certain factors are met, which may be refuted by affirmative evidence. That these two consecutive provisions contain the same exclusionary language, asserts the employer, demonstrates that it was the legislature's clear intent not to allow PPD in these two classes of occupational diseases. The employer points out the following absurd result of the commission's decision: a nonsmoker would not be eligible for PPD benefits because the employer would not be able to use smoking to rebut the statutory presumption, and the claim would be allowed, while a smoker would be eligible for PPD benefits because the employer would be able to use smoking to rebut the statutory presumption.

{¶ 30} The magistrate finds the employer's position not well taken. Initially, as the commission points out, the employer's focus on R.C. 4123.68(X) is misplaced. In the June 1, 2022, order, the SHO found that claimant met his burden of establishing—by a

preponderance of the evidence under the general provisions of R.C. 4123.68 rather than the presumption-of-causation provision under R.C. 4123.68(X)—that his injury was caused by his employment. Because claimant did not pursue further appellate remedies after the commission's June 23, 2022, refusal order, the determination that the general provisions in R.C. 4123.68 applied rather than the presumption-of-causation provision in R.C. 4123.68(X) was final. The SHO then based his March 22, 2023, order on the June 1, 2022, order to find that claimant was eligible to apply for PPD compensation under R.C. 4123.57.

{¶ 31} The magistrate finds no mistake of law in the SHO's March 22, 2023, order. As explained above, the only determination before the SHO was whether claimant was properly granted PPD compensation under R.C. 4123.57. The employer failed to demonstrate a clear mistake of law in the SHO's determination that PPD compensation was appropriate. Although the employer attempts to draw a comparison between R.C. 4123.68(W) and 4123.68(X) to claim that PPD compensation is excluded under both provisions—for all cancers in firefighters under R.C. 4123.68(X) and for cardiovascular, pulmonary, or respiratory diseases of firefighters under R.C. 4123.68(W)—this belated argument relates to the June 1, 2022, order that found claimant eligible for PPD compensation pursuant to the preponderance-of-the-evidence standard under the general provisions of R.C. 4123.68 and not the presumption under R.C. 4123.68(X). As stated, the provisions in R.C. 4123.68(X) are not applicable to the determination of PPD benefits here, and this argument is without merit. In the end analysis, the SHO was tasked with determining whether claimant was entitled to PPD compensation under R.C. 4123.57, and the employer has set forth no valid argument as to why claimant does not qualify given that he proved that his prostate cancer was caused by his employment by a preponderance of the evidence.

{¶ 32} Nevertheless, the magistrate notes that, although the employer asserts that R.C. 4123.68(X)(4) excludes PPD benefits from all firefighter cancer claims—not only those claims allowed via the presumption—R.C. 4123.68(X)(4) specifically indicates that its language limiting the types of compensation available applies only to "[c]ompensation for cancer contracted by a firefighter * * * under division (X) of this section." Thus, the limitation of compensation to only that for temporary total disability, working wage loss,

permanent total disability, or death, and the exclusion of compensation for PPD, applies only to cancer claims allowed using the presumption afforded by division (X) not cancer claims allowed using the general provisions in R.C. 4123.68.

{¶ 33} For these reasons, the commission correctly applied R.C. 4123.57 and committed no clear mistake of law, and the employer's arguments are without merit.

{¶ 34} Accordingly, it is the magistrate's recommendation that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.